AUTAR SINGH BHINDER, EXECUTOR (ESTATE OF BALJIT SINGH BHINDER) *v.* SUN COMPANY, INC. (SC 16674)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued October 21, 2002—officially released April 29, 2003

*William J. O'Sullivan,* for the appellant (defendant).

*John J. Morgan,* with whom, on the brief, were *Albert J. Barr* and *Douglas R. Penn,* for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the trial court properly granted the plaintiff's motion to strike the defendant's apportionment complaint against the apportionment defendant because General Statutes § 52-572h (o) precludes apportionment of damages between parties on any basis other than negligence. The defendant, Sun Company, Inc., appeals[1] from the judgment of the trial court striking its apportionment complaint against Raul Garcia, Jr. The defendant claims that the trial court improperly struck its apportionment complaint because: (1) application of No. 99-69, § 1 (o), of the 1999 Public Acts (P.A. 99-69, § 1 [o]), to the present case violates the doctrine of separation of pow-

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

ers and the due process clause of both the federal and state constitutions; and (2) even if P.A. 99-69, § 1 (o), generally precludes apportionment, the defendant had a vested right to such apportionment pursuant to this court's previous decision in *Bhinder* v. *Sun Co.*, 246 Conn. 223, 242, 717 A.2d 202 (1998) (*Bhinder I*), in which we concluded that the defendant could seek apportionment in the present case. We disagree and we affirm the judgment of the trial court.

Our opinion in *Bhinder I* sets forth the following relevant facts and procedural history. "The defendant was the owner of a Sunoco gasoline service station and convenience store (station) located at 336 Main Street in Norwalk. Nandu C. Patel and Sumitra N. Patel leased the station from the defendant and operated it pursuant to a franchise agreement (agreement) with the defendant. The defendant was responsible for the supervision of the franchisees, their agents and their employees. In addition, the defendant installed and supervised all security measures located at the station. Pursuant to the agreement, the station was to be operated twenty-four hours a day, seven days a week. The station had experienced a history of criminal incidents, including prior thefts and an armed robbery, of which the defendant was aware. The decedent [Baljit Singh Bhinder] was employed at the station and on April 13, 1995, he worked from 6 p.m. to 6 a.m. Sometime during that time period, an armed assailant entered the premises and shot the decedent several times in the head and chest. The assailant took several hundred dollars from the cash register and fled. The decedent was discovered by a delivery man early on the morning of April 14, and subsequently died of his injuries. Thereafter, the plaintiff [Autar Singh Bhinder, the executor of the estate of the decedent] brought a wrongful death action against the defendant, alleging, inter alia, that it had been aware of prior criminal activity at the station, but

had negligently failed to provide adequate security, and that such negligence was the proximate cause of the decedent's death. Pursuant to [General Statutes (Rev. to 1997) § 52-572h[2] and General Statutes § 52-102b],[3] the defendant subsequently filed a two count apportion-

[2] General Statutes (Rev. to 1997) § 52-572h provided in relevant part: "(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction. . . ."

[3] General Statutes § 52-102b provides: "(a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment

ment complaint against [Garcia], the decedent's alleged

complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. If the apportionment complaint is served within the time period specified in subsection (a) of this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment, except that, if the action against the defendant who instituted the apportionment complaint pursuant to subsection (a) of this section is subject to such a defense or bar, the apportionment defendant may plead such a defense or bar to any claim brought by the plaintiff directly against the apportionment defendant pursuant to subsection (d) of this section.

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action.

"(d) Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint.

"(e) When a counterclaim is asserted against a plaintiff, he may cause a person not a party to the action to be brought in as an apportionment defendant under circumstances which under this section would entitle a defendant to do so.

"(f) This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.

"(g) In no event shall any proportionate share of negligence determined pursuant to subsection (f) of section 52-572h attributable to an apportionment defendant against whom the plaintiff did not assert a claim be reallo-

assailant, seeking apportionment of liability. In both counts of the complaint, the defendant alleged that Garcia intentionally shot the decedent and was responsible for his death. The defendant alleged in the first count that Garcia acted recklessly, and in the second count that Garcia acted wilfully and wantonly. The plaintiff filed a motion to strike the defendant's apportionment complaint for failure to state a cause of action upon which relief could be granted asserting that, as a matter of law, apportionment of liability pursuant to § 52-572h applies only to parties whose conduct was negligent. The trial court agreed and granted the plaintiff's motion to strike the defendant's complaint." *Bhinder I*, supra, 246 Conn. 226–29.

On appeal, we concluded that the text and legislative history of General Statutes (Rev. to 1997) § 52-572h did not reveal an intent by the legislature for the term "negligence" in the statute to include conduct other than negligence and, therefore, that the statute did not contemplate apportionment between a negligent defendant and an alleged intentional or reckless tortfeasor. Id., 234. We also concluded, however, that the statute did not preclude a negligent defendant from apportioning liability to an intentional defendant as a matter of common law. Id., 238. Our decision was based on the premise that precluding the defendant from apportioning fault would be "inconsistent with the principle of comparative negligence that a defendant should be liable only for that proportion of the damages for which he or she was responsible," and that the "plaintiff's construction [of the statute] would have the . . . effect

cated under subsection (g) of said section. Such proportionate share of negligence shall, however, be included in or added to the combined negligence of the person or persons against whom the plaintiff seeks recovery, including persons with whom the plaintiff settled or whom the plaintiff released under subsection (n) of section 52-572h, when comparing any negligence of the plaintiff to other parties and persons under subsection (b) of said section."

of rendering a negligent party solely responsible for the conduct of an intentional actor, whose deviation from the standard of reasonable care is clearly greater." Id. We concluded, therefore, that it was "consistent with the principles of apportionment to permit the allocation of fault in a negligence action between a negligent and an intentional tortfeasor"; id., 243; and, accordingly, that the defendant should have been allowed to file an apportionment complaint against Garcia. Id., 234.

In response to our decision in *Bhinder I*, the legislature passed P.A. 99-69, § 1 (o), now codified at General Statutes § 52-572h (o), which provides: "Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556." The legislature made P.A. 99-69 effective on August 11, 1998, the date our decision in *Bhinder I* was released. The parties in the present case do not dispute that the statute now entirely precludes apportionment on any basis other than negligence.

As a result of the passage of P.A. 99-69, § 1 (o), the plaintiff again moved to strike the defendant's apportionment complaint against Garcia, claiming that, in light of that act, our decision in *Bhinder I* was no longer good law, and that no right of apportionment existed against Garcia. The trial court granted the plaintiff's motion to strike, concluding that the legislature, when enacting P.A. 99-69, § 1 (o), intended to clarify General

Statutes (Rev. to 1997) § 52-572h, and, accordingly, that it should be applied retrospectively to the present case. The trial court subsequently granted the defendant's motion for entry of judgment in favor of the apportionment defendant on the stricken complaint and rendered judgment thereon. This appeal followed.

Before addressing the merits of the defendant's claim, we set forth the standard of review applicable to an appeal challenging the trial court's granting of a motion to strike. "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the trial court's ruling is plenary. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997). We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 64–65, 793 A.2d 1048 (2002).

The defendant first claims that the legislature, in making P.A. 99-69 retroactive to the date of our decision in *Bhinder I*, violated the doctrine of separation of powers[4]

[4] "The [federal] Constitution enumerates and separates the powers of the three branches of Government in Articles I, II, and III, and it is this 'very structure' of the Constitution that exemplifies the concept of separation of powers." *Miller* v. *French*, 530 U.S. 327, 341, 120 S. Ct. 2246, 147 L. Ed. 2d 326 (2000).

Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . ."

and the due process clause[5] under both the federal and state constitutions. The plaintiff contends in response that, because P.A. 99-69, § 1 (o), serves a legitimate state purpose and because the legislature intended to clarify General Statutes (Rev. to 1997) § 52-572h, the legislature did not violate the due process clause or the separation of powers doctrine by making P.A. 99-69 retroactive and, therefore, applicable to the present case. We agree with the plaintiff.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing

---

[5] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

Thus, to determine properly whether the enactment of P.A. 99-69, § 1 (o), violates the doctrine of separation of powers and the due process clause, it is necessary to determine whether the legislature changed the existing law or merely clarified General Statutes (Rev. to 1997) § 52-572h. We engage in this inquiry to determine whether the amendment created a new substantive liability, thus implicating due process concerns, and to determine whether the legislature improperly intruded on the judicial authority, thus implicating separation of powers concerns. *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–46, 699 A.2d 101 (1997). "We presume that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a

prior statute must be accepted as the legislative declaration of the meaning of the original act." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 648–49, 687 A.2d 134 (1997). Furthermore, an amendment that is intended to clarify the intent of an earlier act necessarily has retroactive effect. *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). We conclude that the trial court properly determined that the legislature clarified General Statutes (Rev. to 1997) § 52-572h in enacting P.A. 99-69, § 1 (o), and, therefore, retroactive application of the statute, as amended, to the present case does not violate the doctrine of separation of powers or the due process clause.

The legislative history of P.A. 99-69, § 1 (o), clearly reveals the legislature's intention to clarify the meaning of the statute as a reaction to our decision in *Bhinder I*. During the legislative debate on the bill in the House of Representatives, Representative Michael P. Lawlor stated: "This bill intends to correct what many people interpret to be a wrongful decision by our state Supreme Court made last August. . . . [T]his bill intends to clarify what everyone had understood the law to be prior to a decision of our state Supreme Court last August." 42 H.R. Proc., Pt. 6, 1999 Sess., p. 1916.[6] Additionally,

---

[6] Representative Lawlor further stated later during the legislative debate: "This amendment doesn't add any new content to the bill it just makes it ever more clear that the only intention of this bill is [to] revert the law to what everyone understood it had been prior to last August's decision. . . . [I]f I could just state for legislative intent so that there's no mistake about what the General Assembly intends in proposing and hopefully passing this bill, it's the intent of this legislation to restore the state of the law as it existed prior to the state Supreme Court decision last August 11th in [*Bhinder I*, supra, 246 Conn. 223]. . . . The bill simply allows apportionment of liability and damages only in actions based on negligence. And let me emphasize . . . there was a great deal of concern among the various parties and interests who are represented here at the legislature as to whether or not in some way this bill would do more than go back to the way the law was prior to last August's Supreme Court decision. It's, based on the testimony before our committee and the discussions that have happened prior [to] today, it's very clear that the only intent here is to put the law back where everyone

during the debate in the Senate, Senator Donald E. Williams remarked: "The intent of this legislation is to restore the state of the laws as it existed prior to a Connecticut supreme court decision in [*Bhinder I, supra*, 246 Conn. 223]. . . . It simply allows apportionment of liability and damages only in actions based on negligence. So, essentially this would not allow such apportionment between a negligent and an intentional tortfeasor. And through that . . . it would restore us to the state of the law that existed through tort reform legislation in the 1980's . . . ." 42 S. Proc., Pt. 6, 1999 Sess., pp. 1797–98.

Our conclusion that P.A. 99-69, § 1 (o), was intended to clarify § 52-572h to address our decision in *Bhinder I* is reinforced by our decision in *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 804, 756 A.2d 237 (2000), wherein we concluded that it would be inconsistent with § 52-572h (o) to permit a defendant sued in negligence to claim apportionment against a product seller whose alleged misconduct stemmed from product liability. In making that determination, we analyzed the effect that P.A. 99-69, § 1 (o), had on our decision in *Bhinder I*. In describing the actions of the legislature, we stated: "First, the legislature reaffirmed that, as a matter of statutory interpretation, only negligent persons may be cited in as apportionment defendants pursuant to the statute. Thus, in this respect, P.A. 99-69 endorsed the corresponding statutory interpretation part of *Bhinder* [*I*]. Second, the legislature made clear its intent that apportionment principles would not apply where the basis of liability of the purported apportionment defendant was based on conduct 'other than negligence,' including but not limited to intentional, wanton or reckless misconduct, strict liability, and liability pursuant to any cause of action created by statute. Thus,

understood it to be last year. That's the only purpose of this bill." 42 H.R. Proc., *supra*, pp. 1918–19.

in this respect, the *legislature made clear its intent to overrule the common-law portion of Bhinder [I].*" (Emphasis added.) Id., 803. We conclude, therefore, that the trial court was correct in its determination that, based on the text of the statute, the legislative history, and our prior case law, P.A. 99-69, § 1 (o), clarified the statute in light of our decision in *Bhinder I.*

The enactment of P.A. 99-69, § 1 (o), was, therefore, a reaction to a judicial interpretation that the legislature deemed inappropriate. See *State* v. *Magnano*, supra, 204 Conn. 283. "Even though the legislative clarification was prompted by a judicial decision that the legislature deemed mistaken, such a clarification does not constitute an invasion of judicial authority. Like legislators, judges are fallible. The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we had previously interpreted a statute to confer." *State* v. *Blasko*, 202 Conn. 541, 558, 522 A.2d 753 (1987). Because the legislature has the power to make evident its original intent, its exercise of that power, through the enactment of clarifying legislation, simply cannot violate the doctrine of separation of powers.

The defendant relies on the United States Supreme Court's decision in *Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211, 227, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995), for its proposition that it is not within the legislature's power to affect the decisions of this court as such decisions apply to pending cases. The defendant's reliance on *Plaut*, however, is misplaced. First, *Plaut* involved a situation in which Congress had reopened cases that had been dismissed as untimely and, therefore, had become final judgments. Id., 214. The court explained: "The prohibition [against legislative interference with judicial judgments] is violated when an individual *final judgment* is legislatively rescinded for even the very best of reasons, such as the legislature's genu-

ine conviction (supported by all the law professors in the land) that the judgment was wrong; and it is violated 40 times over when 40 *final judgments* are legislatively dissolved." (Emphasis added.) Id., 228. The violation of the doctrine of separation of powers that existed in *Plaut* was, therefore, a result of Congress' attempt to reopen *final judgments* based on a substantive change in the law. In adopting P.A. 99-69, § 1 (o), however, the legislature *clarified* existing law and, more importantly, the present case had not yet come to a final judgment. In this regard, a jury had not been impaneled, no evidence had been offered, and the case was far from its conclusion. Thus, the reasoning adopted in *Plaut* is inapposite here.

Second, "[w]e have often held . . . that it is as much within the legislative power as the judicial power—subject, of course, to constitutional limits other than the separation of powers—for the legislature to declare what its intent was in enacting previous legislation." *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 45. Implicit in our decisions allowing the legislature to clarify its intent in prior legislation was the recognition that pending cases, even those that eventually spawned the clarifying legislation, could be affected. Id., 45–46. Our decision in *State* v. *Magnano*, supra, 204 Conn. 273, is particularly illustrative in this regard.

In *Magnano*, the trial court denied a motion by a battered women's shelter to quash a subpoena, requiring a shelter counselor to testify before a grand jury regarding certain communications made by the defendant to a counselor at the shelter. Id. As a result of that ruling allowing the communications, the legislature promulgated Public Acts 1983, No. 83-429 (P.A. 83-429), subsequently codified as General Statutes (Rev. to 1985) § 52-146k, which provided in relevant part that battered women's counselors or sexual assault counselors shall

not disclose such confidential communications unless the victim who made the communication waives the privilege. Id., 273–74. At the defendant's trial, which was held after the effective date of P.A. 83-429, the trial judge admitted into evidence the testimony regarding the communications, over the defendant's objections, because they were made prior to the effective date of P.A. 83-429. Id. On appeal to this court, we concluded that, based on our review of the legislative history, P.A. 83-429 was intended to clarify the original intent of the statute and, therefore, applied to the defendant's communication to her counselor, even though the communications occurred prior to the effective date of P.A. 83-429. Id., 283. Thus, we previously have determined that clarifying statutes can apply to cases pending at the time of their effective dates, even those which provided the impetus for the clarifying legislation in the first instance. We conclude, therefore, that the application of P.A. 99-69, § 1 (o), to the present case does not violate the doctrine of separation of powers.

The defendant also contends that the application of P.A. 99-69, § 1 (o), deprives it of a vested property interest, which, as a matter of due process, cannot be abrogated by the legislature. We again disagree.

At their core, the due process clauses of the state and federal constitutions require that one subject to a significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard. See *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996). In the first instance, as explained in further detail later in this opinion, the defendant has no property right in our decision in *Bhinder I*, permitting it to bring an apportionment claim against Garcia. Therefore, there could not have been a deprivation of any cognizable property right that could give rise to a claim of a violation of due process. Additionally, as noted previously, the nature of

clarifying legislation is necessarily retroactive because it explains what the intent of the legislature was when the prior statute was enacted. Because of the inherently retroactive nature of clarifying legislation, we conclude that the application of P.A. 99-69, § 1 (o), to the present case simply does not rise to the level of a due process violation.[7]

We also note that under federal constitutional law, the retroactive application of statutes is not a per se violation of due process. To the contrary, retroactive legislation only must meet the most deferential standard of review, namely, the rational basis test. See *Pension Benefit Guaranty Corp.* v. *R. A. Gray & Co.*, 467 U.S. 717, 730, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984) ("The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former. . . . But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." [Citation omitted; internal quotation marks omitted.]). In the present case, the legislative purpose of P.A. 99-69, § 1 (o), was to clarify the statute and restore the law to where it was before our decision in *Bhinder I*. Because the legislature merely clarified what its intent was when enacting § 52-572h, the application of P.A. 99-69, § 1 (o), to the present case clearly satisfies the rational basis test. Because the application of P.A. 99-69, § 1

---

[7] Similarly, in *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 44–45, we rejected a claim that retroactive application of a clarifying statute violated the due process clause of the fourteenth amendment of the United States constitution. In rejecting that claim, we stated: "The necessarily retroactive effect of clarifying legislation is not to be confused with the retroactive effect of legislation that changes the law. The former clarifies the substantive provisions to which a person has always been subject. The latter applies substantive provisions to a person heretofore not subject to those provisions. A claim that a clarifying amendment has created new substantive liability, therefore, is inapposite." Id., 44.

(o), to the present case does not violate the doctrine of separation of powers or the due process clause, the trial court properly granted the plaintiff's motion to strike.

The defendant next contends that the trial court improperly granted the motion to strike because our decision in *Bhinder I* gave the defendant a vested right to a claim for apportionment against Garcia. The plaintiff responds that no vested right was created by *Bhinder I*, and that the legislature had the power to clarify the law and apply it to the present case. We agree with the plaintiff.

As discussed previously, we regularly have recognized the right of the legislature to clarify statutes in response to judicial interpretation. Public Act 99-69, §1 (o), is an example of such clarifying legislation and can, therefore, apply retroactively to the present case. Although clarifying legislation is necessarily retroactive; *State* v. *Magnano*, supra, 204 Conn. 284; the retroactive nature of clarifying legislation has limits. For instance, clarifying legislation "must not operate in a manner that would unjustly abrogate vested rights." (Internal quotation marks omitted.) *Toise* v. *Rowe*, 243 Conn. 623, 631, 707 A.2d 25 (1998). "A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." (Internal quotation marks omitted.) Id. The only remaining issue is, therefore, whether our decision in *Bhinder I*, which subsequently was clarified by the legislature, gave the defendant a vested right to bring an apportionment complaint against Garcia. We conclude that it did not.

We previously have concluded that a claimant does not have a vested right to have his appeal adjudicated in accordance with the statute that was in place at the

time of his trial when the legislature has amended the statute in the interim. *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 574, 440 A.2d 220 (1981). The statute at issue in *Enfield Federal Savings & Loan Assn.,* was enacted in response to our decision in *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 576–77, 409 A.2d 1020 (1979), in which we held unconstitutional the statutory procedures governing the assessment of deficiency judgments in mortgage foreclosures. *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, 570. The defendant in that case claimed that the new procedures enacted by the legislature in response to our decision deprived him of his "constitutionally protected right to have his original appeal heard on the basis of the law as it existed at the time of the rendering of the original deficiency judgment." Id., 571.

When analyzing whether the defendant had a vested right to have his appeal adjudicated in accordance with the prior law, we acknowledged that, if the defendant's case had gone to final judgment without appeal before the amendment of the statute, "considerations of good sense and justice would have dictated the conclusion that his rights in that judgment could not thereafter be legislatively abrogated." Id., 572. We went on to state, however: "In our view, the proper question is not whether the judgment was final for other purposes, but whether, in this case, it has so far concluded the rights of the parties that it was unjust to have the case adjudicated, upon a retrial, in accordance with the amended procedures that the legislature had enacted." Id., 573. We concluded that there was "[n]othing in the circumstances of this case [that] requires this court to consider a judgment on appeal to be so definitively final that the procedures challenged by that appeal cannot be legislatively regularized while that appeal is pending." Id., 574.

We find the reasoning employed in *Enfield Federal Savings & Loan Assn.* persuasive with respect to the case presently before us. Consistent with our decision in *Enfield Federal Savings & Loan Assn.*, we see no reason why, after the legislature clarified what it felt was an inappropriate decision by this court, that our decision would, nevertheless, still be applicable to the defendant here, whose case was pending at the time the statute was amended. The case was not so far concluded that it would be unjust to have the case adjudicated in accordance with the statute as it has been clarified by the legislature. Indeed, the only aspect of the litigation thus determined involved two motions to strike. In the absence of any claim of any detrimental reliance by the parties on the expectation that the right to apportionment would exist; *Toise* v. *Rowe*, supra, 243 Conn. 631; we conclude that the defendant does not have any vested right to the claim for apportionment pursuant to our decision in *Bhinder I.*

The defendant relies on *Massa* v. *Nastri*, 125 Conn. 144, 147, 3 A.2d 839 (1939), in support of its argument that our decision in *Bhinder I* gave the defendant a vested right to a common-law claim for apportionment. In *Massa*, this court stated: "A right of action . . . is a vested property interest, before as well as after judgment, at least where it comes into existence under common-law principles, and is not given by statute as a mere penalty or without equitable basis." (Internal quotation marks omitted.) Id. The defendant contends that because we concluded in *Bhinder I* that a cause of action for apportionment existed under common law, it became a vested right that could not be abrogated by the legislature.

While we agree that a cause of action can be considered a vested property interest, the cause of action to which the defendant claims a vested right here, in reality, never existed. Put differently, the defendant simply

could not have attained a vested right in our decision in *Bhinder I*, because, as discussed previously, when clarifying legislation is enacted, it establishes what the law was, and what the legislature's intent was at the time the statute was promulgated. In this way, the defendant never attained a vested right to common-law apportionment because, as the legislature later clarified, a common-law right to apportionment between a negligent and intentional tortfeasor always was precluded by § 52-572h. Common sense would, therefore, dictate that the defendant cannot have a vested right in a cause of action that never existed. Because the defendant does not have a vested right to bring an action for common-law apportionment, the trial court properly granted the plaintiff's motion to strike.

The judgment is affirmed.

In this opinion KATZ, PALMER and VERTEFEUILLE, Js., concurred.

SULLIVAN, C. J., concurring. I agree with the majority's conclusion in this matter except on the issue of statutory interpretation. My position on this issue continues to be the same as set forth in my concurrence in *Mandell* v. *Gavin*, 262 Conn. 659, 672, 816 A.2d 619 (2003), and in the dissenting opinion by Justice Zarella, in which I joined, in *State* v. *Courchesne*, 262 Conn. 537, 597, 816 A.2d 562 (2003).