GREENWICH HOSPITAL *v.* GENE GAVIN,
COMMISSIONER OF REVENUE SERVICES
(SC 16799)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

512

Argued January 7—officially released September 2, 2003

*William H. Narwold*, with whom were *Charles D. Ray* and, on the brief, *Ingrid L. Moll*, for the appellant (plaintiff).

*Joan C.G. Grear*, assistant attorney general, with whom were *Joseph Rubin*, associate attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (defendant).

*John C. Yavis, Jr.*, and *Everett E. Newton* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The plaintiff, Greenwich Hospital, appeals from the summary judgment rendered by the trial court in favor of the defendant, Gene Gavin, the commissioner of revenue services. The defendant had denied the plaintiff's request for a refund of a portion of the gross earnings tax it had paid pursuant to General Statutes § 12-263b,[1] specifically, the portion paid on charges to patients for tangible personal property used in the course of providing patient care ser-

[1] General Statutes § 12-263b provides: "There is hereby imposed on the hospital gross earnings of each hospital in this state a tax (1) at the rate of eleven per cent of its hospital gross earnings in each taxable quarter for taxable quarters commencing prior to October 1, 1996; (2) at the rate of nine and one-fourth per cent of its hospital gross earnings in each taxable quarter commencing on or after October 1, 1996, and prior to October 1, 1997; (3) at the rate of eight and one-fourth per cent of its hospital gross earnings in each taxable quarter commencing on or after October 1, 1997, and prior to October 1, 1998; (4) at the rate of seven and one-fourth per cent of its hospital gross earnings in each taxable quarter commencing on or after October 1, 1998, and prior to October 1, 1999; and (5) at the rate of four and one-half per cent of its hospital gross earnings in each taxable quarter commencing on or after October 1, 1999, and prior to April 1, 2000. The hospital gross earnings of each hospital in this state shall not be subject to the provisions of this chapter with respect to calendar quarters commencing on or after April 1, 2000. Each hospital shall, on or before the last day of January, April, July and October of each year, render to the Commissioner of Revenue Services a return, on forms prescribed or furnished by the Commissioner of Revenue Services and signed by one of its principal officers, stating specifically the name and location of such hospital, and the amounts of its hospital gross earnings, its net revenue and its gross revenue for the calendar quarter ending the last day of the preceding month. Payment shall be made with such return."

The plaintiff's request for a refund was for taxes paid from 1996 through 1998. We are aware that the taxation rate set forth in § 12-263b has varied since that time, however, those rates and other technical changes to the statute are not at issue in this appeal. Accordingly, for purposes of clarity, references herein are to the current revision of § 12-263b.

vices. The trial court's decision relied, in part, on Public Acts 2000, No. 00-174, § 68 (8) (P.A. 00-174), which clarified the definition of "patient care services" in General Statutes § 12-263a (2).[2] The plaintiff claims that the trial court improperly relied on P.A. 00-174 in determining that the tax on a hospital's gross earnings applied to charges for tangible personal property used in the course of providing patient care services. We disagree and, accordingly, affirm the judgment of the trial court.

The trial court's memorandum of decision sets forth the following relevant facts and procedural history. "[The plaintiff] is a nonprofit, charitable, nonstock corporation organized under the laws of the state of Connecticut, with its principal place of business located in Greenwich . . . . In 1994, the state . . . imposed a gross earnings tax . . . on the 'amount of a hospital's total charges for all patient care services.' General Statutes § 12-263a (2).[3] Essentially, the [gross earnings tax] is based upon the determination of the net revenue of the hospital. Net revenue is determined by making

[2] General Statutes § 12-263a (2) provides: " 'Gross revenue' means the amount of a hospital's total charges for all patient care services minus any refunds resulting from errors or overcharges . . . ." Section 12-263b imposes the gross earnings tax on a hospital's "gross earnings," which are defined in § 12-263a (7) as the hospital's "net revenue" minus certain projected amounts. "Net revenue" is derived from "gross revenue." General Statutes § 12-263a (6).

While several technical changes have been made to § 12-263a since its enactment in 1994, subsections (2), (6) and (7) have remained unchanged. References herein are to the current revision of the statute.

[3] Section 12-263b, the gross earnings statute, was enacted by the General Assembly as an emergency certified bill in response to the decision in *New England Health Care Employees Union District 1199, SEIU AFL-CIO* v. *Mount Sinai Hospital,* 846 F. Sup. 190, 195–200 (D. Conn. 1994), rev'd, 65 F.3d 1024 (2d Cir. 1995), where the court ruled that a state statute, which allowed hospitals to impose a surcharge on the bill of privately insured patients to be used to subsidize the hospitals for uncompensated or undercompensated care they had provided, was preempted by a federal statute. See Public Acts 1994, No. 94-9, § 22; see also 37 S. Proc., Pt. 2, 1994 Sess., pp. 639-40.

certain deductions from the total charges for all hospital patient care services. . . .

"Since 1994, [the plaintiff] calculated and paid the [gross earnings tax] based on the total charges for both the actual services and the tangible personal property used in rendering the [patient care] services. [The plaintiff] contends that it mistakenly included the tangible personal property charges in the charges for patient care services in its calculation of gross revenue."

The trial court's memorandum of decision further provided: "In March, 1999, [the plaintiff] filed with the [defendant] a request for a refund of a portion of the [gross earnings tax] it had paid for the period of January 1, 1996, to December 31, 1998. [The plaintiff] sought a refund for tax it claims it mistakenly paid on items of tangible personal property [used in rendering patient care services].[4] [The plaintiff] claims that it mistakenly calculated the [gross earnings tax] amount due based on its total charges for both patient care services and tangible personal property. [It] claims that the term 'patient care services' in . . . § 12-263a (2) referred only to personal services, and did not include charges to patients for the items of tangible personal property used in delivering the patient care services. After the [defendant] disallowed [the plaintiff's] request for a refund and denied [its] protest of the disallowance, [the plaintiff] filed [an] appeal [to the trial court] pursuant to General Statutes §§ 12-263e[5] and 12-554.[6]

---

[4] Tangible personal property charges are charges for items such as room service, initial evaluations, therapy, drugs, medical supplies and anesthesia.

[5] General Statutes § 12-263e provides: "The provisions of sections 12-550 to 12-554, inclusive, and section 12-555a shall apply to the provisions of sections 12-263a to 12-263e, inclusive, in the same manner and with the same force and effect as if the language of said sections 12-550 to 12-554, inclusive, and said section 12-555a had been incorporated in full into sections 12-263a to 12-263e, inclusive, and had expressly referred to the tax under said sections, except to the extent that any provision is inconsistent with a provision in said sections 12-263a to 12-263e, inclusive."

[6] General Statutes § 12-554 provides: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of

* * *

"[After the plaintiff's appeal was filed] [t]he legislature repealed the [gross earnings tax] for all quarterly periods commencing on or after April 1, 2000. Public Acts 2000, No. 00-170, § 9; [see] General Statutes (Rev. to 2001) § 12-263b. During the same session that the legislature discontinued the [gross earnings tax], the legislature clarified the [gross earnings tax] by enacting [P.A.] 00-174, [§ 68] which added a definition of 'patient care services.' General Statutes (Rev. to 2001) § 12-263[a] (8) provides: ' "Patient care services" means therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients, including tangible personal property transferred in connection with such services.' Public Act 00-174 [§ 68] became effective May 26, 2000, and is applicable to all tax periods open on that date. [P.A.] 00-174, § 83."

Revenue Services under the provisions of this chapter may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the Commissioner of Revenue Services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases to be heard, unless cause appears to the contrary, at the first session by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

A minor technical change was made to § 12-554 in 1999, however, we refer herein to the current revision of the statute.

After the legislature clarified the definition of patient care services through the adoption of P.A. 00-174, § 68, the defendant filed a motion for partial summary judgment with regard to counts two and three of the plaintiff's amended three count complaint.[7] The trial court granted the defendant's motion, concluding, in part, that P.A. 00-174, § 68, was a clarification of § 12-263a (2) that was dispositive of the meaning of patient care services. The defendant then moved for partial summary judgment on the remaining count of the complaint, which asserted that the the plaintiff was entitled to a refund for the taxes paid on personal tangible property. The trial court also granted this motion, utilizing the same reasoning it used in granting the first motion for partial summary judgment. The plaintiff appealed to the Appellate Court from the trial court's judgment of dismissal rendered after the granting of the motions for partial summary judgment, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiff claims that P.A. 00-174 was not a clarification of the original enactment of §§ 12-263a and 12-263b, but, rather, was a substantive change in the law, and that P.A. 00-174 does not reflect a legitimate legislative intent to clarify the gross earnings tax. The defendant claims in response that P.A. 00-174 was a legislative clarification that properly was within the authority of the General Assembly. We agree with the defendant.[8]

---

[7] Count two of the amended complaint alleged that the legislature made substantive changes to the gross earnings tax when it enacted P.A. 00-174 and thus, P.A. 00-174 should not be applied retroactively. Count three of the amended complaint alleged that the enactment of P.A. 00-174 violated, inter alia, the doctrine of separation of powers.

[8] The plaintiff also asserts that the gross earnings tax statute, as originally enacted, clearly and unambiguously excluded charges for tangible personal property. We do not address this claim because we conclude that P.A. 00-174 is dispositive of this appeal. The plaintiff further claims that the claimed retroactivity of P.A. 00-174 violated the plaintiff's federal due process rights. The plaintiff addressed this claim of a federal constitutional violation in one short paragraph of its brief to this court. This claim, therefore, was

The following additional facts are necessary for the resolution of this appeal. After the plaintiff appealed to the trial court from the defendant's denial of a tax refund, the legislature enacted the statutory amendment providing that tangible personal property was included in the meaning of patient care services in § 12-263a (2). Public Act 00-174, § 68, added the following definition to § 12-263a: " 'Patient care services' means therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients, *including tangible personal property transferred in connection with such services.*" (Emphasis added.) This definition was later codified as General Statutes § 12-263a (8). Public Act 00-174, § 70, specifically set forth the legislature's intention to clarify the definition of patient care services to include charges for tangible personal property and provides: "The intent of section 12-263a and subsection (29) of section 12-407 of the general statutes, as amended by sections 68 and 69 of this act, is to clarify that current law includes in the base of the hospital gross earnings tax sales of tangible personal property transferred in connection with patient care services and that current law imposes sales tax on the sale of tangible personal property transferred in connection with patient care services."

"We begin by setting forth the applicable standard of review. The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable

inadequately briefed by the plaintiff and we do not address it. See *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 86–87, 755 A.2d 196 (2000).

to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . *LaFlamme* v. *Dallessio*, 261 Conn. 247, 250, 802 A.2d 63 (2002). On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 810 A.2d 259 (2002). Moreover, in determining the effect of P.A. 00-174 on §§ 12-263a and 12-263b, we are guided by well-defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature.[9] See *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

In the present case, the legislature has simplified our task of determining its intention in adopting P.A. 00-174 by incorporating into the text of the act an explicit statement of the legislature's intention. As we previously noted, P.A. 00-174, § 70, provides that "[t]he intent of section 12-263a and subsection (29) of section 12-407 of the general statutes, as amended by sections 68 and 69 of this act, is to *clarify* that current law includes in the base of the hospital gross earnings tax sales of tangible personal property transferred in con-

---

[9] The plaintiff also contended in its brief that the plain meaning rule should be applied in the present case. We do not address this claim because we recently have rejected the plain meaning rule in *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003). After the release of our decision in *Courchesne*, the plaintiff filed a motion for reargument and for supplemental briefing to revise its reliance on the plain meaning rule. We denied the plaintiff's motion, however, because the plaintiff had provided a thorough statutory interpretation analysis in its brief regardless of any reliance on the plain meaning rule.

nection with patient care services . . . ." (Emphasis added.) The plaintiff claims that we should not permit P.A. 00-174 to dictate the outcome of this appeal.[10] We disagree.

This court has a long tradition of embracing clarifying legislation. We most recently affirmed the applicability of legislative clarifications to pending litigation in *Bhinder* v. *Sun Co.*, 263 Conn. 358, 373, 819 A.2d 822 (2003), where the legislature, in response to our decision in a wrongful death case permitting common-law apportionment of damages between a negligent defendant and a party who acted intentionally or recklessly, enacted a statute precluding apportionment between parties on any basis other than negligence. We reversed our original decision in *Bhinder*; see *Bhinder* v. *Sun Co.*, 246 Conn. 223, 717 A.2d 202 (1998); after the relevant legislative clarification was adopted, stating: "[W]e have often held . . . that it is as much within the legislative power as the judicial power—subject, of course, to constitutional limits other than the separation of powers—for the legislature to declare what its intent was in enacting previous legislation. *Connecticut National Bank* v. *Giacomi*, [242 Conn. 17, 45, 699 A.2d 101 (1997)]. Implicit in our decisions allowing the legislature to clarify its intent in prior legislation was the recognition that pending cases, even those that eventually spawned the clarifying legislation, could be affected. Id., 45–46. Our decision in *State* v. *Magnano*, [204 Conn. 259, 273, 528 A.2d 760 (1987)], is particularly illustrative in this regard.

---

[10] The plaintiff also claims that the rule of lenity must be applied to P.A. 00-174, § 68 (8), and that any ambiguities in a statute that imposes a tax must be resolved by strictly construing the statute in favor of the taxpayer. See *Altray Co.* v. *Groppo*, 224 Conn. 426, 432, 619 A.2d 443 (1993); *Texaco, Inc.* v. *Groppo*, 215 Conn. 134, 137, 574 A.2d 1293 (1990). The rule of lenity is not applicable in the present case, however, because we are not required to construe P.A. 00-174, § 68 (8), in order to resolve this appeal. Instead, we construed P.A. 00-174, § 70, which provided the intent of the legislature but did not impose a tax.

"In *Magnano*, the trial court denied a motion by a battered women's shelter to quash a subpoena, requiring a shelter counselor to testify before a grand jury regarding certain communications made by the defendant to a counselor at the shelter. Id. As a result of that ruling allowing the communications, the legislature promulgated Public Acts 1983, No. 83-429 (P.A. 83-429), subsequently codified as General Statutes (Rev. to 1985) § 52-146k, which provided in relevant part that battered women's counselors or sexual assault counselors shall not disclose such confidential communications unless the victim who made the communication waives the privilege. Id., 273–74. At the defendant's trial, which was held after the effective date of P.A. 83-429, the trial judge admitted into evidence the testimony regarding the communications, over the defendant's objections, because they were made prior to the effective date of P.A. 83-429. Id. On appeal to this court, we concluded that, based on our review of the legislative history, P.A. 83-429 was intended to clarify the original intent of the statute and, therefore, applied to the defendant's communication to her counselor, even though the communications occurred prior to the effective date of P.A. 83-429. Id., 283. Thus, we previously have determined that clarifying statutes can apply to cases pending at the time of their effective dates, even those which provided the impetus for the clarifying legislation in the first instance." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, supra, 263 Conn. 372–73.

We also recently affirmed the application of clarifying legislation to pending litigation in *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 755 A.2d 850 (2000). In that case, the legislature had clarified a tax statute during the pendency of an appeal from a trial court judgment. Id., 689. We concluded therein that "[a]s [the plaintiff taxpayer] concedes, [Public Acts 1999, No.] 99-225, § 30, was enacted

directly in response to the holding of the trial court in this case that scrap tires constitute hazardous waste under [General Statutes] § 22a-115 (1) and that, consequently, scrap tire removal services are exempt from sales tax under [General Statutes] § 12-407 (2) (i) (I). The legislature's prompt and unambiguous response to the trial court's decision provides persuasive support for the [defendant] commissioner's contention that the legislature intended to clarify, rather than to change, the statutory definition of hazardous waste." Id., 693.

In another recent tax case, *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 517, 767 A.2d 692 (2001), we reiterated the test for determining the effect of new legislation on pending litigation. The plaintiff in *Andersen Consulting, LLP*, like the plaintiff in the present case, had sought a refund for a portion of taxes it had paid. Id., 509. After the defendant commissioner of revenue services had denied most of the plaintiff's claimed refund, the plaintiff appealed to the trial court, which sustained the plaintiff's appeal and ordered the payment of a refund. Id., 509–11. We reversed the trial court's judgment because a public act clarifying the applicable tax statute had been passed by the legislature during the pendency of the appeal from the trial court ruling. Id., 513–14. We concluded that "[i]n determining the intended effect of a later enactment on earlier legislation, two questions must be asked. First, was the act intended to *clarify* existing law or to *change* it? Second, if the act was intended to make a change, was the change intended to operate retroactively?" (Emphasis in original; internal quotation marks omitted.) Id., 517.

In the present case, the intent of the legislature in enacting P.A. 00-174 was manifested in the terms of the legislation itself, which provided specifically that the intent of the act was clarification. P.A. 00-174, § 70. Although the plaintiff urges us to conclude that the legislative intent in adopting P.A. 00-174 was not "legiti-

mate" and that the act effected a substantive change in the law, we find no support in the record for either claim. The legislative history confirms that the applicable portions of P.A. 00-174 were understood as clarifying and nonsubstantive. During the introduction of the amendment on the floor of each chamber, Representative Richard O. Belden and Senator Martin M. Looney, respectively, explained that § 68 of P.A. 00-174 was intended to clarify the definition of patient care services.[11] See 43 H.R. Proc., Pt. 19, 2000 Sess., p. 6187; remarks of Representative Belden; 43 S. Proc., Pt. 8, 2000 Sess., p. 2561, remarks of Senator Looney. Additionally, Senator William H. Nickerson added that all the changes made in the amendment were technical and did not substantively alter any existing law. He stated that "[t]his [bill] has been carefully reviewed by caucus leaders . . . and myself and [I] concur in Senator Looney's comments that by and large it is a technical implementation of necessary changes to the tax laws with no major substantive problems. No major substantive initiatives in it." 43 S. Proc., supra, p. 2563. We conclude that "[i]n this case . . . there is no reason not to accept the legislative history of [P.A. 00-174] at face value." *State* v. *Blasko*, 202 Conn. 541, 558, 522 A.2d 753 (1987). Because we conclude that P.A. 00-174 was clarifying legislation, there is no need to address the second consideration discussed in *Andersen Consulting, LLP*, concerning retroactive application of legislation making a substantive change in the law.

The plaintiff acknowledges that this court has deferred to legislative clarifications since 1930. It nevertheless encourages us to alter our long-standing

---

[11] Representative Belden stated: "We clarify [with this bill] the definition of patient care services and computer data processing services." 43 H.R. Proc., Pt. 19, 2000 Sess., p. 6187. Senator Looney stated: "There is a section of the bill that clarifies the definition of patient care services and computer data processing to preclude a potential revenue loss." 43 S. Proc., Pt. 8, 2000 Sess., p. 2561.

approach, and offers cases from other jurisdictions that have concluded that one legislature's interpretation of legislation enacted by a prior legislative body is not binding on a court. See, e.g., *Western Security Bank, N.A.* v. *Superior Court of Los Angeles County*, 15 Cal. 4th 232, 244, 933 P.2d 507, 62 Cal. Rptr. 243 (1997); *Toothaker* v. *Employment Security Commission*, 217 A.2d 203, 208 (Me. 1966); *Ubel* v. *State*, 547 N.W.2d 366, 370 (Minn. 1996); *Subsequent Injury Fund* v. *Homestake Mining Co.*, 603 N.W.2d 527, 531 (S.D. 1999). We decline this invitation to change our approach. We have chosen, unlike those jurisdictions, to defer to the legislature regarding clarifying legislation. We therefore conclude that the trial court properly determined that P.A. 00-174 clarified § 12-263a (2) to provide that the term patient care services included tangible personal property transferred in connection with the rendering of those services.

The judgment is affirmed.

In this opinion NORCOTT, KATZ and PALMER, Js., concurred.

ZARELLA, J., concurring. I agree with the majority's conclusion in this case but write separately to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting). I also agree with the majority's decision not to address the plaintiff's claim that the retroactive application of Public Acts 2000, No. 00-174, violated its federal due process rights because that claim was inadequately briefed. I would note, however, that, even if we were to reach the plaintiff's due process claim, the result in this case would be the same in light of *United States* v. *Carlton*, 512 U.S. 26, 31, 35, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994), in which the United

States Supreme Court held that the retroactive application of "curative" federal tax legislation did not violate a taxpayer's fifth amendment due process rights.