******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESTATE OF HELEN B. BROOKS
ET AL. *v.* COMMISSIONER
OF REVENUE SERVICES
(SC 19577)

Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 5, 2016—officially released May 23, 2017*

*Dennis A. Zagroba*, with whom were *Heather Spaide* and *Patricio Suarez*, for the appellants (plaintiffs).

*Dinah J. Bee*, assistant attorney general, with whom were *Matthew Budzik*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (defendant).

*Opinion*

EVELEIGH J. The plaintiffs, the coexecutors of the estate of Helen B. Brooks,[1] appeal from the trial court's rendering of summary judgment in favor of the defendant, the Commissioner of Revenue Services.[2] The trial court upheld the decision of the defendant to deny the plaintiffs' request for a refund of estate taxes paid by the estate of the decedent, Helen B. Brooks (decedent). On appeal, the plaintiffs claim that the trial court incorrectly concluded that the defendant had statutory authority to include in the decedent's gross estate the value of certain qualified terminable interest property (QTIP) in which the decedent enjoyed a life interest and levy an estate tax upon such property. The plaintiffs also assert that the defendant's construction of the statute resulted in a violation of the plaintiffs' due process rights. We disagree with the plaintiffs and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The material facts in this case are not in dispute. The decedent died on September 22, 2009, domiciled in Connecticut. She was predeceased by her husband, Everett Brooks (Everett), who died January 31, 2000. Everett was a resident of Florida at the time of his death. At that time, Florida and Connecticut each had an estate tax based on the amount of the federal credit allowed for state death taxes. See 26 U.S.C. § 2011 (2000); General Statutes (Rev. to 1999) § 12-391; Fla. Stat. § 198.02 (2000). Everett's will was probated in Florida. Pursuant to Everett's will, two trusts were created to hold certain assets of the estate.[3] The decedent, acting as executor of Everett's estate, elected to qualify both trusts as QTIP marital deduction trusts. See 26 U.S.C. § 2056 (b) (7) (2000). Pursuant to Everett's will, the decedent enjoyed a beneficial life interest in the assets of the trusts. Everett's will also granted the decedent a testamentary limited power of appointment to direct the remainder of the trusts among Everett's children. In the absence of such an appointment by the decedent, the principal of the trusts was to be distributed according to Everett's will. The trusts consisted of intangible personal property—namely, cash and publicly traded stocks and bonds. The decedent and Attorney Herbert J. Hummers were appointed trustees of the trusts. Hummers was given the power to invade the principal of the trusts for the benefit of the decedent.[4] The decedent did not have the power to invade the principal of the trust. In or about 2002, the decedent moved to Connecticut and lived in the state continuously until her death.

After the decedent's death, the plaintiffs timely filed a request for extension and made an estimated tax payment of $1,435,000. On November 4, 2010, the plaintiffs timely filed a Connecticut estate tax return for the decedent's estate that intentionally omitted the value

of the trusts and claimed a refund in the amount of $988,827. The plaintiffs included a statement on the return asserting that the value of those assets was not properly includable in the Connecticut gross estate of the decedent. The defendant's audit division disallowed the plaintiffs' request for a refund. The plaintiffs subsequently filed a timely appeal to the defendant's appellate division, which affirmed. The plaintiffs then filed a timely appeal from that decision to the trial court pursuant to General Statutes §§ 12-395 (a) (1) and 12-554. See generally *Coyle* v. *Commissioner of Revenue Services*, 142 Conn. App. 198, 203–205, 69 A.3d 310 (2013), appeal dismissed, 312 Conn. 282, 91 A.3d 902 (2014). On cross motions for summary judgment, the trial court concluded that the assets of the trusts were properly included in the decedent's gross estate and, therefore, were subject to the estate tax. In addition, the trial court concluded that the imposition of the tax upon the estate did not violate the due process clause of the fourteenth amendment to the United States constitution. Accordingly, the trial court denied the plaintiffs' motion for summary judgment and granted the defendant's motion. The trial court then rendered judgment thereon in favor of the defendant. This appeal followed. Additional facts and procedural history will be set forth as necessary.

"Because the decision to grant a motion for summary judgment is a question of law, our review of the trial court's decision is plenary." *Dattco, Inc.* v. *Commissioner of Transportation*, 324 Conn. 39, 44, 151 A.3d 823 (2016). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Cefaratti* v. *Aranow*, 321 Conn. 637, 645, 138 A.3d 837 (2016).

I

We begin by discussing the background of the federal tax concepts implicated in the present case. In 1981, Congress enacted "the most dramatic and expansive liberalization of the [m]arital [d]eduction in history." *Estate of Clayton* v. *Commissioner of Internal Revenue*, 976 F.2d 1486, 1492 (5th Cir. 1992). Such a feat was achieved in two ways. First, Congress provided for the unlimited marital deduction. Economic Recovery Tax Act of 1981, Pub. L. 97-34, § 403 (a), 95 Stat. 301; see also 26 U.S.C. § 2056 (a).[5] Federal law did not, however, previously allow for the deduction of terminable interests. *Estate of Clayton* v. *Commissioner of Internal Revenue*, supra, 1492. Mindful of rising divorce and remarriage rates, Congress created an exception to the general rule against allowing a deduction for the interspousal transfer of terminable interests so that a decedent may exert more control over the ultimate

disposition of certain assets while still financially providing for the surviving spouse with such assets unburdened by front end taxation. See id., 1492–93 and n.26. Thus, the concept of QTIP was born. Id., 1493.

Federal tax law currently operates by granting the marital deduction to the first to die spouse in the amount of the value of certain property, subject to certain qualifications, so long as the first to die spouse gives a beneficial life interest in such property to the surviving spouse. 26 U.S.C. § 2056 (b) (7).[6] In order to ensure that the property does not pass to the remainder beneficiaries untaxed, the federal tax code imposes a tax upon the happening of two events. During the life of the surviving spouse, any disposition of a qualifying life interest in property is treated as a transfer of the remainder interest in such property for purposes of the gift tax. See 26 U.S.C. § 2519 (a).[7] To the extent that the surviving spouse did not make any inter vivos disposition of any qualifying life interest in property, the entire value of the property in which the surviving spouse enjoyed a qualifying life interest is included in his or her gross estate and is treated as property passing therefrom. See 26 U.S.C. § 2044.[8] In short, a fictional transfer occurs from the first to die spouse to the surviving spouse, and a second fictional transfer occurs upon the death of the surviving spouse to the remainder beneficiaries. We note that, in the present case, it is undisputed that the assets contained within the trusts established pursuant to Everett's will were properly included in the decedent's federal gross estate.

II

First, we address the plaintiffs' claim that, pursuant to General Statutes § 12-391 (c) (3),[9] the assets contained within the trusts are not includable in the decedent's gross estate. Specifically, the plaintiffs claim that the relevant federal estate tax provisions have been incorporated into the state estate tax provisions and, therefore, the assets contained within the trusts form part of the decedent's state gross estate only if the state allowed a deduction with respect to the transfer of such property to the decedent following Everett's death. The defendant claims that such an interpretation of § 12-391 (c) (3) is inconsistent with the plain meaning of the provision—namely, that the gross estate for state estate tax purposes is the same as the gross estate for federal estate tax purposes. We agree with the defendant.

The plaintiffs' claim implicates a matter of statutory construction. Our standard of review for statutory construction claims is well established. "When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [the court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case,

including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs [the court] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 307–308, 152 A.3d 488 (2016). "[A]long with these principles, we are also guided by the applicable rules of statutory construction specifically associated with the interpretation of tax statutes. . . . [W]hen the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed . . . in favor of the taxpayer. . . . Nevertheless, [i]t is also true . . . that such strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used." (Internal quotation marks omitted.) *Groton* v. *Commissioner of Revenue Services*, 317 Conn. 319, 328–29, 118 A.3d 37 (2015).

We acknowledge that "when our tax statutes refer to the federal tax code, federal tax concepts are incorporated into state law." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 305 n.15. Nevertheless, we have explained that "this rule does not require the wholesale incorporation of the entire body of federal tax principles into our state income tax scheme . . . ." (Internal quotation marks omitted.) Id. Instead, "where a reference to the federal tax code expressly is made in the language of a statute, *and where incorporation of federal tax principles makes sense in light of the statutory language at issue*, our prior cases uniformly have held that incorporation should take place." (Emphasis added; internal quotation marks omitted.) Id.

In the present case, the statutory language provides that the term gross estate "means the gross estate, for federal estate tax purposes." General Statutes § 12-391 (c) (3). The plain language of the statute requires nothing more than the gross estate as reported on the federal estate tax return. The construction urged by the plaintiffs would result in a value of the gross estate for state estate tax purposes that would differ from the value of the gross estate for federal estate tax purposes. Specifically, looking at whether Connecticut deducted the value of a QTIP trust from the estate of the first to die spouse in order to ascertain whether such assets are to be included in the state gross estate of the surviving spouse would not be "for federal estate tax purposes."

General Statutes § 12-391 (c) (3). Thus, according to § 12-391 (c) (3), if assets are included in a decedent's federal gross estate, they are included in his or her state gross estate as well.

In addition, this construction is buttressed by § 12-391 (f) (2), which provides: "An election under said [26 U.S.C. § 2056 (b) (7)] may be made *for state estate tax purposes* regardless of whether any such election is made for federal estate tax purposes. The value of the gross estate shall include the value of any property in which the decedent had a qualifying income interest for life for which an election was made under this subsection." (Emphasis added.) Thus, the legislature has created a separate state QTIP election and inclusion provision. Construing § 12-391 (c) (3) to require the state to have first granted a deduction for the value of a QTIP trust from the gross estate of the first to die spouse in order to properly include the value of such in assets in the gross estate of the surviving spouse would, in essence, create a state QTIP election by incorporation that would render a separate election under § 12-391 (f) (2) superfluous. See, e.g., *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 309 ("statutes shall not be construed to render any sentence, clause, or phrase superfluous or meaningless" [internal quotation marks omitted]). Accordingly, we conclude that the plain language of the statute, when read in context with other related provisions, clearly provides that the assets contained within the trusts at issue are includable in the decedent's gross estate pursuant to § 12-391 (c) (3) because they were included in the decedent's gross estate for federal estate tax purposes.

Not advancing a textual basis for their construction of the provision, the plaintiffs rely principally upon case law for their claim that the federal estate tax code is incorporated into § 12-391 (c) (3). At first blush, our holding in *Berkley* v. *Gavin*, 253 Conn. 761, 772–75, 756 A.2d 248 (2000), would appear to strongly support the plaintiffs' position in the present case. In *Berkley*, the issue was whether the phrase "as determined for federal income tax purposes" in the statute defining adjusted gross income; General Statutes (Rev. to 1999) § 12-701 (a) (19); "means as determined in accordance with federal income tax methodology, or as reported on a taxpayer's federal income tax return." *Berkley* v. *Gavin*, supra, 772. Relying on case law, this court held that the phrase meant the former because the pertinent federal tax provisions for determining adjusted gross income were incorporated into this state's income tax provisions. Id., 774. This included the tax benefit rule. 26 U.S.C. § 111.[10] As a result, whether certain recovered losses were included in Connecticut adjusted gross income in the present year would depend on whether the taxpayer had reduced his *state* income tax liability, but not necessarily his federal income tax liability, in a previous year as a result of such previously reported

losses. In essence, the incorporation of the federal tax benefit rule resulted in a "*Connecticut* tax benefit rule . . . ." (Emphasis in original.) Id., 783 (*Sullivan, J.*, dissenting).[11] This is precisely the interpretation the plaintiffs seek in the present case—namely, that the inclusion of a QTIP marital deduction trust in a decedent's state gross estate requires the state to have granted a corresponding deduction to the estate of the first to die spouse. Justice Sullivan, in his dissent in *Berkley*, pointed out that the result reached by the majority in that case was inconsistent with the plain language of the statute because such a modification of Connecticut adjusted gross income was not "for federal income tax purposes . . . ." (Internal quotation marks omitted.) Id., 784. Indeed, as a result of the holding in *Berkley*, the legislature subsequently clarified the definition of adjusted gross income by adding the phrase "and as properly reported on such person's federal income tax return." Public Acts, Spec. Sess., June, 2001, No. 01-6, § 35; see also Public Acts, Spec. Sess., June, 2001, No. 01-6, § 36 (stating legislative intent). To construe the provision defining gross estate in the present case to incorporate the federal estate tax code would result, as Justice Sullivan pointed out in *Berkley*, in a construction inconsistent with the plain language of the relevant statute. We conclude, especially in light of the principles of § 1-2z, which was not in effect when *Berkley* was decided, that incorporation of federal tax statutes into our statutory provisions should be determined in the first instance with reference to the plain meaning of § 12-391 (c) (3).

Next, we disagree with the plaintiffs' contention that our holding in *New York Trust Co.* v. *Doubleday*, 144 Conn. 134, 145, 128 A.2d 192 (1956), incorporated all provisions of the federal estate tax into our estate tax code. In that case, we stated the following "The Connecticut estate tax statute . . . adopts as the base for computing the tax 80 [percent] of the amount of the basic federal estate tax. Inferentially, then, our statute incorporates within itself the provisions of the federal estate tax statute, governing the computation of the federal estate tax, including all of the provisions of the latter statute for exemptions and deductions." Id. The estate tax statute at issue in that case bears no resemblance to the estate tax at issue in the present case.[12] The previous estate tax, known as the pick up tax, was principally based upon the federal credit available under 26 U.S.C. § 2011. See G. Wilhelm & L. Weintraub, Connecticut Estate Practice: Death Taxes in Connecticut (4th Ed. 2013) § 1:2, p. 1-6. Under the previous estate tax, "[t]he amount of the tax was the amount by which such credit exceeded the total amount of all death taxes, including the Connecticut succession tax, actually paid to the several states and territories." Id., pp. 1-6 through 1-7. We described our estate tax at that time as one that did "no more than to divert into the state treasury

what would otherwise be taken by the federal government as a part of the federal estate tax." *New York Trust Co.* v. *Doubleday*, supra, 145. After Congress repealed the state death tax credit,[13] the legislature enacted a new, stand alone estate tax applicable to decedents dying on or after January 1, 2005. See Public Acts 2005, No. 05-251, § 69. The decedent's estate is being taxed under the present, stand-alone estate tax, not the pick up tax. Accordingly, we construe the present estate tax statute anew, unbound by this court's construction of a substantively different and inoperative tax statute.

In sum, we conclude that the value of the QTIP marital deduction trusts at issue in the present case are included in the decedent's gross estate for Connecticut estate tax purposes because those assets are included in the decedent's gross estate for federal estate tax purposes.

### III

We next address the plaintiffs' claim that § 12-391 does not permit the defendant to tax the assets contained within the QTIP marital deduction trusts because the decedent did not own the property subject to the tax. In particular, the plaintiffs claim that the statutory language in effect at the time of the decedent's death; General Statutes (Rev. to 2009) § 12-391 (d) (3);[14] limits the authority of the defendant to impose a tax upon intangible personal property to only such property owned by the decedent and that, therefore, the assets contained within the trusts at issue are not taxable. The defendant claims that No. 13-247, § 120, of the 2013 Public Acts (P.A. 13-247), and No. 14-155, § 12, of the 2014 Public Acts (P.A. 14-155), clarified the original intention of the legislature with respect to the meaning of the relevant provision and, therefore, applies retroactively. Specifically, P.A. 13-247, § 120, amended § 12-391 (d) (3) to, inter alia, replace the words "owned by the decedent" with "included in the gross estate of the decedent," and P.A. 14-155, § 12, expressly declared the legislative intent of P.A. 13-247, § 120, to be "clarifying in nature and applicable to all open estates." The defendant points to the legislative history of both acts in support of his claim. The plaintiffs counter that, notwithstanding the legislature's belated attempt in P.A. 14-155 to declare its intent regarding the amendments, P.A. 13-247 amounted to a substantive change to the law that can only be applied prospectively. As evidence, the plaintiffs point to the effective date of January 1, 2013, contained in P.A. 13-257, § 120. The plaintiffs further claim that if § 12-391 (d) (3) were construed in accordance with its plain meaning, it would be evident that the amendment amounted to a substantive change. The plaintiffs also dispute that the legislative history is sufficient to support the conclusion that the amendment was clarifying in nature. We agree with the defendant.

We begin by discussing the legal standard we apply in determining whether the legislature intended statutory amendments to be clarifying in nature. "We presume that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . Furthermore, an amendment that is intended to clarify the intent of an earlier act necessarily has retroactive effect." (Citation omitted; internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 263 Conn. 358, 368–69, 819 A.2d 822 (2003). "This court has a long tradition of embracing clarifying legislation." *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 520, 829 A.2d 810 (2003); accord *State* v. *Banks*, 321 Conn. 821, 841–42, 146 A.3d 1 (2016); see also *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 685 n.21, 99 A.3d 1038 (2014) ("there is no question that the legislature has the power to enact clarifying legislation").[15] "[W]e have often held . . . that it is as much within the legislative power as the judicial power—subject, of course, to constitutional limits other than the separation of powers—for the legislature to declare what its intent was in enacting previous legislation." (Internal quotation marks omitted.) *Greenwich Hospital* v. *Gavin*, supra, 520. Accordingly, as a matter of statutory construction, we need not construe the original statutory language upon finding that subsequent legislation is clarifying in nature. See id., 517 and n.8; see also *Raftopol* v. *Ramey*, 299 Conn. 681, 685–86 n.7, 12 A.3d 783 (2011).

"To determine whether the legislature enacted a statutory amendment with the intent to clarify existing legislation, we look to various factors, including, but not limited to (1) the amendatory language . . . (2) the declaration of intent, if any, contained in the public act . . . (3) the legislative history . . . and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was enacted in direct response to a judicial decision that the legislature deemed incorrect . . . or passed to resolve a controversy engendered by statutory ambiguity . . . ." (Citations omitted; internal quotation marks omitted.) *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 174, 927 A.2d 793 (2007). Not each factor is given equal weight. We have previously observed that the legislature "simplifie[s] our task of determining its intention in adopting [amendatory legislation] by incorporating into the text of the act an explicit statement of the legislature's intention." *Greenwich Hospital* v. *Gavin*, supra, 265 Conn. 519.

First and foremost, the legislature enacted express language manifesting its intention to clarify its original intent with respect to the relevant provision. Section

12 of P.A. 14-155 provides in relevant part: "It is the intent of the General Assembly that the amendments made by section 120 of public act 13-247 to subsections (d) and (e) of section 12-391 of the general statutes, as amended by this act, are clarifying in nature and apply to all open estates." The plaintiffs concede that such expressions of legislative intent are often taken as conclusive evidence of original legislative intent.

Nevertheless, the plaintiffs rightfully point out that, when the legislature enacted P.A. 13-247, § 120, it made the provision applicable to the estates of decedents dying after January 1, 2013.[16] The plaintiffs argue that the express declaration of intent to clarify should not be given effect because it directly conflicts with the effective date of P.A. 13-247, § 120, and there is no other evidence that the legislature intended that amendment to be clarifying. Contrary to the plaintiffs' claim, the legislative history of P.A. 13-247, § 120, does support the conclusion that the amendatory language was, in fact, clarifying in nature. To be sure, the legislative history is scant, but it points in favor of the defendant. Senator John W. Fonfara, in response to a question from Senator L. Scott Frantz, remarked that the revision to the estate tax statute is "technical and is consistent with how we've always implemented this procedure so it doesn't change the way Connecticut has implemented this provision previously." 56 S. Proc., Pt. 17, 2013 Sess., p. 5459.[17] We have previously recognized that testimony in which amendatory language is described as technical tends to support the conclusion that the legislature intended the language to be clarifying. See *Greenwich Hospital* v. *Gavin*, supra, 265 Conn. 523. Additionally, it is not disputed that the claims made by the plaintiffs in the present case, as well as other taxpayers, were the impetus behind P.A. 13-247, § 120. Thus, the amendment "invokes the principle of statutory construction that [i]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ." (Internal quotation marks omitted.) *State* v. *Blasko*, 202 Conn. 541, 558, 522 A.2d 753 (1987); see also *Caron* v. *Inland Wetlands & Watercourses Commission*, 222 Conn. 269, 279, 610 A.2d 584 (1992).

Finally, the plaintiffs claim that the plain meaning of the term "owned by" in General Statutes (Rev. to 2009) § 12-391 operated as a substantive limitation on the state's authority to levy the estate tax on certain property included in the gross estate. Thus, according to the plaintiffs, notwithstanding the legislature's declaration of intent in P.A. 14-155, § 12, the amendatory language in P.A. 13-247, § 120, broadened the class of intangible personal property subject to the estate tax and, thereby, effected a substantive change to the law that must be applied prospectively. We acknowledge that, at some point, a change in the law is so substantial

that, no matter how forcefully the legislature expresses its intent to clarify, the change must be regarded as substantive. See *State* v. *Blasko*, supra, 202 Conn. 558 ("[t]he legislature could not, even by extensive protestations of legislative intent, convert an act that is truly curative into one that is effectively clarifying"). Nevertheless, the plaintiffs have failed to persuade us to discount the clear expression of legislative intent in the present case.[18] First, this is not a case in which the legislature "attempt[ed] to clothe a retroactive substantive change in clarifying garb by, for example, attempting to 'clarify' the meaning of a statute to mean something different from a court's repeated and consistent interpretation of the same statute." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44 n.33, 699 A.2d 101 (1997). Furthermore, it is far from clear that the ordinary meaning of "owned by" furnished the proper statutory construction when that language was operative. A narrow construction of the phrase "owned by" would arguably operate to prevent the state from ever levying the estate tax upon any qualifying life interest— whether the property is included in the gross estate because the decedent held a federally qualifying life interest in a trust under § 12-391 (c) (3) or a state qualifying life interest under § 12-391 (f) (2)—because, as the plaintiffs urge, the surviving spouse did not *own* the trust assets in which he or she enjoyed the life interest. Thus, we reject the plaintiffs' claim that the amendment effected such a significant change to the law that the only conclusion to be drawn, notwithstanding a declaration of express legislative intent to the contrary, is that the change was substantive. The effective date indicated in P.A. 13-247, § 120, is an outlier among all the evidence that points to the conclusion that the amendatory language was clarifying in nature. Accordingly, we conclude that P.A. 13-247, § 120, is clarifying in nature and, therefore, necessarily applies retroactively to the decedent's estate in the present case.

The plaintiffs also claim that retroactive application of the amended statute to the estate of the decedent would result in a violation of the due process clause of the fourteenth amendment to the United States constitution. This claim fails because the amendment was not a substantive change to the law. *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 44. "The necessarily retroactive effect of clarifying legislation is not to be confused with the retroactive effect of legislation that changes the law. The former clarifies the substantive provisions to which a person has always been subject. The latter applies substantive provisions to a person heretofore not subject to those provisions." Id. To the extent that clarifying legislation must satisfy the rational basis test set forth in *United States* v. *Carlton*, 512 U.S. 26, 30–31, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994), because the legislature merely clarified its intent when enacting the Connecticut estate tax, the

application of P.A. 13-257, § 120, to the present case clearly satisfies the rational basis test. See *Bhinder* v. *Sun Co.*, supra, 263 Conn. 374. Accordingly, we reject the plaintiffs' claim that the retroactive application of the amendment to the decedent's estate violates due process.

IV

Lastly, we address the issue of whether, at the death of the decedent, a transfer of the assets contained within the QTIP marital deduction trusts occurred such that it was proper to levy the estate tax based on the value of those assets. By its terms, the Connecticut estate tax is a tax "imposed upon the *transfer* of the estate of each person who at the time of death was a resident of this state." (Emphasis added.) General Statutes § 12-391 (d) (1) (B). The plaintiffs claim that no transfer occurs at the death of a life beneficiary of a QTIP marital deduction trust; rather, a "deemed" or "fictional" transfer occurs in order to collect the tax that was deferred when the actual taxable transfer was made at the death of the first to die spouse. In other words, because Connecticut did not defer imposition of the estate tax upon Everett's actual transfer of assets into the trusts when he died in Florida, it cannot now properly tax the "fictional" transfer of those assets from the decedent's estate. As a result, according to the plaintiffs, the imposition of the estate tax on the decedent's estate in the present case results in an impermissible tax upon an out-of-state transfer in violation of the due process clause of the fourteenth amendment. The defendant claims that the Connecticut estate tax is properly levied upon the transfer of the QTIP trust assets at the decedent's death. The defendant maintains that a transfer can be characterized by the shift in legal relationships to property occasioned by death, and a tax on such shifts is a proper excise tax within the state's taxing authority. In turn, because the decedent was a domiciliary of the state at her death, the defendant maintains that imposing the tax on this transfer comports with the due process clause. We agree with the defendant.

The underlying basis for the assets of these trusts being included in the decedent's gross estate is that those assets qualified as QTIP under the federal tax code. See part II of this opinion. But in order to be very clear, we set aside the fictions of the QTIP provisions. The defendant seeks to levy the estate tax on certain assets in which the decedent enjoyed a life interest. The issue that we must resolve is whether the defendant may impose the estate tax based on the value of trust assets in which a decedent enjoyed only a life interest.

As an initial matter, it is clear that the legislature intended "transfer" to be construed as broadly as possible. As the discussion in part II of this opinion demonstrates, the legislature intended for all property in the federal gross estate to be included in the state gross

estate. See General Statutes § 12-391 (c) (3). Second, as the discussion in part III of this opinion demonstrates, § 12-391 (d) (3), as amended, reveals a clear legislative intent to calculate and levy the estate tax upon all intangible personal property included in the gross estate to the greatest extent permitted by the federal constitution. It would be illogical for the legislature to have called for the inclusion of QTIP marital deduction trusts in the gross estate of the decedent, but also have intended a narrow definition of "transfer" that would operate to prevent the defendant from levying the tax on the value of such property. Accordingly, "transfer" must be construed to embrace the shifting in relationships to property attendant to the death of a life beneficiary.

The crux of the plaintiffs' statutory claims in the present case is that the defendant's construction of the estate tax statute results in the imposition of an unconstitutional tax upon the decedent's estate. The plaintiffs are correct "that this court has a duty to construe statutes, whenever possible, to avoid constitutional infirmities . . . ." (Internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 245, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). "[W]hen called [on] to interpret a statute, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) Id. Accordingly, we turn to the issue of whether this construction of the estate tax statute is constitutionally infirm.

We first set forth the appropriate standard of review. "With respect to a statutory challenge on constitutional grounds, [a] validly enacted statute carries with it a strong presumption of constitutionality, [and] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality . . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear. . . . In other words, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citation omitted; internal quotation marks omitted.) *A. Gallo & Co.* v. *Commissioner of Environmental Protection*, 309 Conn. 810, 822, 73 A.3d 693 (2013), cert. denied,    U.S.   , 134 S. Ct. 1540, 188 L. Ed. 2d 581 (2014).

The state's right "to exercise the widest liberty with respect to the imposition of internal taxes always has been recognized in the decisions of [the Supreme Court of the United States]." *Shaffer* v. *Carter*, 252 U.S. 37, 51, 40 S. Ct. 221, 64 L. Ed. 445 (1920); accord *Allen* v.

*Commissioner of Revenue Services*, supra, 324 Conn. 314–15. The imposition of an estate tax falls within the broad authority of the sovereign to impose an excise tax. See, e.g., *West* v. *Oklahoma Tax Commission*, 334 U.S. 717, 727, 68 S. Ct. 1223, 92 L. Ed. 1676 (1948); *Whitney* v. *State Tax Commission of New York*, 309 U.S. 530, 538, 60 S. Ct. 635, 84 L. Ed. 909 (1940); *United States Trust Co.* v. *Helvering*, 307 U.S. 57, 60, 59 S. Ct. 692, 83 L. Ed. 1104 (1939). "[T]he estate tax as originally devised and constitutionally supported was a tax upon transfers." *Fernandez* v. *Wiener*, 326 U.S. 340, 352, 66 S. Ct. 178, 90 L. Ed. 116 (1945); see generally *Knowlton* v. *Moore*, 178 U.S. 41, 20 S. Ct. 747, 44 L. Ed. 969 (1900). A proper excise or estate tax, however, is levied not only upon literal transfers at death. Rather, any "creation, exercise, acquisition, or relinquishment of any power or legal privilege which is incident to the ownership of property" at the death of the decedent is subject to tax as a transfer at death. *Fernandez* v. *Wiener*, supra, 352.[19] In other words, a sovereign may tax the transmutation of legal rights in property occasioned by death. See id., 358 ("[w]e find no basis for the contention that the tax is arbitrary and capricious because it taxes transfers at death and also the shifting at death of particular incidents of property"); see also *United States Trust Co.* v. *Helvering*, supra, 60 ("[the estate tax] is an excise imposed upon the transfer of or shifting in relationships to property at death").

In *Fernandez*, the heirs of the decedent challenged, on various federal constitutional grounds, the imposition of the estate tax on the one-half share of marital community property owned by a surviving spouse at the death of the decedent. *Fernandez* v. *Wiener*, supra, 326 U.S. 346–47. The heirs had argued that, at the decedent's death, the surviving spouse "acquire[d] no new or different interest in the property" and the death of neither spouse "operate[d] to transfer, relinquish or enlarge any legal or economic interest in the property of the other spouse." Id., 346. The court rejected the heirs' claims, noting that, notwithstanding the fact that the surviving spouse's rights were vested, the surviving spouse was liberated of the burdens of the decedent's rights over the survivor's share and enjoyed greater rights in the property. Id., 355–56. The court summarized that, "[i]t is enough that death brings about changes in the legal and economic relationships to the property taxed, and the earlier certainty that those changes would occur does not impair the legislative power to recognize them, and to levy a tax on the happening of the event which was their generating source." Id., 356–57.

We conclude that taxing the assets contained within the QTIP marital deduction trusts upon the death of the decedent in the present case fits comfortably with the general principles set forth in *Fernandez*. The termination of the decedent's beneficial life interest in those

assets, and the remainder beneficiaries coming into possession and enjoyment of their successive interests, is a sufficient "shifting at death of particular incidents of property" to properly impose an excise tax. Id., 358.

The plaintiffs' claim that the reasoning of *Coolidge* v. *Long*, 282 U.S. 582, 51 S. Ct. 306, 75 L. Ed. 562 (1931), compels the conclusion that a properly taxable transfer of property does not occur when, at the death of the decedent, the decedent's life interest in the property terminates. In that case, before the operative state succession tax law took effect, the decedent executed a trust declaration reserving for herself and her spouse life interests in certain property with remainders to take effect in possession upon the death of the surviving spouse. Id., 593–94. The operative statute in that case subjected to a tax "[a]ll property . . . which shall pass by . . . deed, grant or gift . . . made or intended to take effect in possession or enjoyment after [the grantor's] death . . . ." (Internal quotation marks omitted.) Id., 595. The United States Supreme Court rebuffed the Massachusetts Supreme Judicial Court's conclusion that the death of the survivor of the settlors of the trust was a "taxable commodity under the statute enacted after the creation of the trust," and held that the tax was an unconstitutional retroactive tax under the due process clause of the fourteenth amendment and the contract clause. Id., 595–99. The court reasoned that the grant of the remainder to each of the beneficiaries was "a grant in praesenti," to be enjoyed at the death of the surviving spouse. Id., 597. The court stated that the provision of income for the life of the settlors "did not operate to postpone the vesting in the sons of the right of possession or enjoyment," and the trustees were bound to turn over the property at the death of the survivor. Id. Thus, the decedent's death was not the "generating source of any right in the remaindermen. . . . There was no transmission then." (Citation omitted.) Id., 597–98. "The succession, when the time came, did not depend upon any permission or grant of the [c]ommonwealth." Id., 598. The reasoning of that case does not, however, alter our conclusion in the present case.

First, the United States Supreme Court has sharply criticized cases that, like *Coolidge* v. *Long*, supra, 282 U.S. 598, were "decided during an era characterized by exacting review of economic legislation under an approach that 'has long since been discarded.' " *United States* v. *Carlton*, supra, 512 U.S. 34, quoting *Ferguson* v. *Skrupa*, 372 U.S. 726, 730, 83 S. Ct. 1028, 10 L. Ed. 2d 93 (1963). In fact, in *Carlton*, the United States Supreme Court specifically referred to *Nichols* v. *Coolidge*, 274 U.S. 531, 47 S. Ct. 710, 71 L. Ed. 1184 (1927), in its criticism of case law from that era. That case involved application of the federal estate tax to the very same trust at issue in *Coolidge* v. *Long*, supra, 582. The court's conclusion in *Coolidge* v. *Long*, supra, 597–98, hinged

on the fact that the trust deed was a present grant that resulted in "vested" rights in the beneficiaries. Vested rights no longer form the touchstone of the analysis of economic regulation. See *Honeywell, Inc.* v. *Minnesota Life & Health Ins. Guaranty Assn.*, 110 F.3d 547, 554 (8th Cir. 1997) (noting that law had "drift[ed] away from the *Lochner* [v. *New York*, 198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905)] era's strict protection of economic freedom and vested rights"). The court in *Fernandez* clearly subordinated the fact that the surviving spouse's rights were vested to the practical legal and economic shift occasioned by the decedent. *Fernandez* v. *Wiener*, supra, 326 U.S. 356.[20]

It is clear from the reasoning in *Fernandez* that the court embraced a broader concept of transfer than when the court considered *Coolidge* v. *Long*, supra, 282 U.S. 582. The court in *Coolidge* v. *Long*, supra, 597, reasoned that the death of the settlor was not the "generating source of any right in the remaindermen." In *Fernandez* v. *Wiener*, supra, 326 U.S. 356–57, the court took a more practical approach and looked not to whether death was the generating source of "rights," but rather whether death was the generating source of "changes in the legal and economic relationships to the property taxed . . . ." This more encompassing language employed by the court reflects its embrace of an evaluation of the practical economic and legal shifts occasioned by death rather than a reliance of formalistic property law distinctions in determining whether a properly taxable transfer has occurred.

To the extent the reasoning of *Coolidge* v. *Long*, supra, 282 U.S. 582, survives, the case can be distinguished by the type of tax at issue. In that case, the statute imposed a tax on a grant in trust to take effect at the death of the settlor or the settlor's surviving spouse. See id., 595–96. Put more simply, the statute, by its terms, taxed the transfer in trust of the property. In the present case, the statute does not purport to tax the transfer of assets from Everett; rather, the statute taxes property in which the decedent had a federally qualifying life interest. See 26 U.S.C. § 2044 (a); General Statutes § 12-391 (c) (3). The tax in the present case is directly targeting the changes in legal and economic relationships to the property, not a prior transfer.

Finally, *Coolidge* v. *Long*, supra, 282 U.S. 582, was decided long before the evolution of state and federal tax schemes that employ complex fictions designed to effectuate certain public policy—such as treating a married couple as a single economic unit—while ensuring that such tax schemes do not form apertures through which it would be possible to avoid taxation. In order to effectuate social and economic policy, legislators have crafted ever more complex tax laws than those that simply tax the transfer of title to property at death. For example, one court described the concept

of QTIP as one that had been invented by Congress "[o]ut of thin air and from whole cloth," noting that "[i]f unlimiting the [m]arital [d]eduction was a flight into the wild blue yonder, Congress truly slipped the surly bonds of earth with the advent of QTIP." (Footnote omitted; internal quotation marks omitted.) *Estate of Clayton* v. *Commissioner of Internal Revenue*, supra, 976 F.2d 1493. Connecticut, too, seeks to impose the estate tax when federally qualified terminable interest property leaves the marital unit, irrespective of whether this state, another state, or no state deducted the value of that property from the taxable estate of the first to die spouse. "Nothing can be less helpful than for courts to go beyond the *extremely limited restrictions* that the [c]onstitution places upon the states and to inject themselves in a merely negative way into the delicate processes of fiscal [policymaking]. We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the [c]onstitution . . . ." (Emphasis added.) *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 445, 61 S. Ct. 246, 85 L. Ed. 267 (1940). "The [c]onstitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation." Id., 444. In sum, we would conclude that *Coolidge* v. *Long*, supra, 582, does not foreclose the defendant from taxing the assets within the QTIP marital deduction trusts at issue in the estate of the decedent as a transfer.

The plaintiffs' claim that the tax in the present case violates the fourteenth amendment as a tax on out-of-state property is also unavailing. It is well settled that "[t]he due process clause denies to the state power to tax or regulate the [entity's] property and activities elsewhere." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 315. With respect to the transfer of real and tangible personal property, the constitutional rule is simple—namely, the state in which the property has an actual situs has the exclusive jurisdiction to levy a tax. *Treichler* v. *Wisconsin*, 338 U.S. 251, 256–57, 70 S. Ct. 1, 94 L. Ed. 37 (1949); *Frick* v. *Pennsylvania*, 268 U.S. 473, 487–88, 45 S. Ct. 603, 69 L. Ed. 1058 (1925). The plaintiffs' claim that the rule in those cases as applied to the trusts in the present case stretches the rule too far.

Unlike real and personal property, intangible personal property is characterized by "legal relationships between persons and which in fact have no geographical location . . . ." *Graves* v. *Schmidlapp*, 315 U.S. 657, 660, 62 S. Ct. 870, 86 L. Ed. 1097 (1942). For this reason, "intangibles themselves have no real situs . . . ." *Greenough* v. *Tax Assessors of Newport*, 331 U.S. 486, 493, 67 S. Ct. 1400, 91 L. Ed. 1621 (1947). Accordingly, the rule of situs is not controlling with respect to the issue of jurisdiction to levy the estate tax upon intangi-

ble personal property. *Curry* v. *McCanless*, 307 U.S. 357, 369–70, 59 S. Ct. 900, 83 L. Ed. 1339 (1939). The proper inquiry with respect to the jurisdiction to levy the estate tax on intangibles is whether "by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society." (Internal quotation marks omitted.) *State Tax Commission of Utah* v. *Aldrich*, 316 U.S. 174, 178–79, 62 S. Ct. 1008, 86 L. Ed. 1358 (1942), quoting *Wisconsin* v. *J. C. Penney Co.*, supra, 311 U.S. 444. The state's authority to impose a tax is at its apogee with respect to a domiciliary. "From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value." *Curry* v. *McCanless*, supra, 366.

Under these principles, we conclude that Connecticut did not lack jurisdiction to tax the transfer of the assets contained within the QTIP marital deduction trust as part of the decedent's estate. The decedent was a domiciliary of this state at the time of her death. She enjoyed all of the benefits of the state attendant to residence therein. During that time, she enjoyed the economic benefits of her beneficial life interest in the trusts. This nexus is sufficient for due process.[21] Accordingly, we conclude that the imposition of the estate tax on the transfer of the assets contained within relevant trusts did not violate due process.

To summarize, we conclude that the trial court properly rendered summary judgment in favor of the defendant because the defendant properly included the value of the assets contained within the QTIP marital deduction trusts in the decedent's gross estate and levied the estate tax thereupon in accordance with § 12-391 without violating due process.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The coexecutors are Dorothy Newberth, Nancy B. Jackman, and David S. Brooks. We note that, although the summons lists the named plaintiff as the estate of Helen B. Brooks, the present action is maintained on its behalf by the coexecutors. See *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 32, 144 A.3d 420 (2016). We have, however, retained the caption of the present case for the sake of consistency with the trial court's memorandum of decision.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Everett's estate elected to separate the trust set forth in Everett's will into two parts in order to allocate a portion of the generation skipping tax exemption to part of the trust. See 26 U.S.C. § 2652 (a) (3) (2000). Neither the separation of the trust into two parts nor the generation skipping tax exemption allocation affects the resolution of this appeal.

[4] Specifically, Everett's will provided in relevant part: "During the life of

my wife my trustee or trustees other than my wife may encroach upon the principal of this residuary trust for her benefit from time to time and pay any portions or all thereof to her or apply the same to her use, if such trustees in such trustees' uncontrolled discretion shall deem the same to be desirable for any reason, and this discretion shall expressly include the power to terminate this trust by such encroachments. It shall not be necessary for such trustees to inquire as to any other income or property of my said wife. Any decision of such trustees with respect to the exercise of said discretionary power, made in good faith, shall fully protect such trustees, and shall be conclusive and binding upon all interested persons. . . ."

[5] The general marriage deduction provision, which is set forth in 26 U.S.C. § 2056 (a), provides: "For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

[6] We note, in particular, that 26 U.S.C. § 2056 (b) (7) (B) provides: "Qualified terminable interest property defined

"For purposes of this paragraph—

"(i) In general

"The term 'qualified terminable interest property' means property—

"(I) which passes from the decedent,

"(II) in which the surviving spouse has a qualifying income interest for life, and

"(III) to which an election under this paragraph applies.

"(ii) Qualifying income interest for life

"The surviving spouse has a qualifying income interest for life if—

"(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

"(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

"Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

"(iii) Property includes interest therein

"The term 'property' includes an interest in property.

"(iv) Specific portion treated as separate property

"A specific portion of property shall be treated as separate property.

"(v) Election

"An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable."

[7] Section 2519 (a) of title 26 of the United States Code provides: "For purposes of this chapter and chapter 11, any disposition of all or part of a qualifying income interest for life in any property to which this section applies shall be treated as a transfer of all interests in such property other than the qualifying income interest."

[8] Section 2044 of title 26 of the United States Code provides in relevant part as follows: "(a) General rule

"The value of the gross estate shall include the value of any property to which this section applies in which the decedent had a qualifying income interest for life. . . .

"(c) Property treated as having passed from decedent

"For purposes of this chapter and chapter 13, property includible in the gross estate of the decedent under subsection (a) shall be treated as property passing from the decedent."

[9] As discussed in part III of this opinion, the legislature has made certain amendments to § 12-391 that are relevant to the present appeal. See Public Acts 2013, No. 13-247, § 120; Public Acts 2014, No. 14-155, § 12. We note, however, the subdivisions discussed in this section, namely § 12-391 (c) (3) and (f) (2), have remained unchanged since the death of the decedent. For the sake of simplicity, all references to § 12-391 in this opinion, unless otherwise noted, are to the current revision of the statute.

[10] The tax benefit rule, 26 U.S.C. § 111 (a), provides: "Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter."

[11] In his dissent, Justice Sullivan illustrated the consequence of incorporating the tax benefit rule as follows: "A taxpayer, in year one, incurs a loss and receives a federal tax benefit because his income is reduced by that

loss. For some reason, however, he receives no Connecticut tax benefit from the loss. In year two, the taxpayer recovers the loss. The taxpayer must pay federal income tax on the recovered income in year two, pursuant to the inclusionary aspect of the tax benefit rule. . . . [B]ecause the taxpayer received no Connecticut tax benefit in year one, he may exclude the recovered income for Connecticut income tax purposes in year two. Accordingly, the adjusted gross income reported on the taxpayer's federal income tax return in year two would have to be modified on his Connecticut income tax return to reflect the exclusion of the recovered loss for Connecticut income tax purposes." (Footnote omitted.) *Berkley* v. *Gavin*, supra, 253 Conn. 783.

[12] The applicable tax statute in *New York Trust Co.* v. *Doubleday*, supra, 144 Conn. 144, "imposed [a tax] upon the transfer of the estate of each person who at the time of death was a resident of this state, the amount of which shall be the amount by which [80 percent] of the estate tax payable to the United States under the provisions of the federal revenue act in force at the date of such decedent's death shall exceed the aggregate amount of all estate, inheritance, legacy, transfer and succession taxes actually paid to the several states and territories of the United States, including this state, in respect to any property owned by such decedent or subject to such taxes as a part of or in connection with his estate." General Statutes (1949 Rev.) § 2065.

[13] See Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, § 532 (a), 115 Stat. 73.

[14] General Statutes (Rev. to 2009) § 12-391 (d) (3) provides: "Property of a resident estate over which this state has jurisdiction for estate tax purposes includes real property situated in this state, tangible personal property having an actual situs in this state and intangible personal property owned by the decedent, regardless of where it is located."

[15] The plaintiffs cite General Statutes §§ 1-1 (u) and 55-3 for the proposition that newly enacted legislation shall not affect pending litigation or be applied retroactively. These statutes, however, create presumptions against retroactivity and application to pending litigation, not a per se bar. *Gil* v. *Courthouse One*, 239 Conn. 676, 687–89, 687 A.2d 146 (1997); see also *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 417 n.45, 119 A.3d 462 (2015) (describing § 1-1 [u] as embodying "rule of *presumed* legislative intent" [emphasis added]); *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 517, 767 A.2d 692 (2001) ("we have uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting substantive rights shall apply prospectively only" [emphasis altered; internal quotation marks omitted]).

[16] In a legislative hearing on the relevant provision, the defendant, in testimony before the legislature, described P.A. 14-155, § 12, as "truly technical. It overturns a drafting error, a really, truly drafting error of last session and restores the intention that [the legislature] had in—in the applicability of the estate tax." Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, 2014 Sess., p. 153, remarks of Kevin B. Sullivan, Commissioner of Revenue Services. We do not, however, accord this testimony any weight in our determination of whether the amendments are clarifying in nature.

[17] Whether Senator Fonfara's testimony pertained to the amendatory language at issue in the present case is the source of disagreement between the parties. The Office of Legislative Research, in its bill analysis, described P.A. 13-247, § 120, as follows: "[1] Makes technical changes to how estate taxes are calculated for Connecticut residents who have estate property in other states. This conforms to current Department of Revenue Services. [2] Provides, for both resident and nonresident estates, that the state may calculate and levy the tax to the fullest extent permitted by the [United States] [c]onstitution." Office of Legislative Research, Bill Analysis for House Bill No. 6706, "An Act Implementing Provisions of the State Budget for the Biennium Ending June 30, 2015 Concerning General Government," (2013), § 120, available at https://www.cga.ct.gov/2013/BA/2013HB-06706-R00-BA.htm (last visited May 4, 2017). The testimony regarding P.A. 13-247, § 120, was limited to two questions. The first question, from Senator Kevin C. Kelly, related to the first point listed in the bill analysis. 56 S. Proc., supra, pp. 5457–58. Senator Fonfara responded that "the section makes a correction that goes back to the decoupling of the state tax from the federal tax and . . . preserves the current tax treatment of real and tangible property, which Connecticut has jurisdiction to tax." Id., p. 5458. Next, Senator Frantz inquired about the second point listed in the bill analysis as follows: "In the

description of that bill, it says it provides for both residents and nonresident estates that the state may calculate and levy the tax to the fullest extent permitted by the [United States] [c]onstitution. May I ask . . . what the fullest extent . . . permitted by the [United States] [c]onstitution is?" Id., p. 5459. We understand the second point in the bill analysis as pertaining to, inter alia, § 12-391 (d) (3). The purpose set forth in the bill analysis was served by amending (d) (3) by substituting the phrase "owned by" with "included in the gross estate of," and adding the following language: "The state is permitted to calculate the estate tax and levy said tax to the fullest extent permitted by the [c]onstitution of the United States." P.A. 13-247, § 120. The changes ensured that the state could continue to levy the tax to the greatest extent permitted by the federal constitution, which according to Senator Fonfara is how the state has always implemented the estate tax; 56 S. Proc., supra, p. 5459; without the risk that a court would strictly construe the phrase "owned by" thereby statutorily narrowing the class of intangible personal property in the gross estate upon which the state could levy the tax. Thus, we understand Senator Fonfara's response to Senator Frantz' question to implicate all changes to § 12-391 (d) (3), including the amendatory language at issue in the present case.

[18] The plaintiffs' claim that the fact that the trial court did not first construe the original statutory language before concluding that the amendatory language was clarifying in nature amounted to an abdication of judicial responsibility resulting in a violation of the plaintiffs' right to separation of powers is wholly without merit. First, we note that the plaintiffs have failed to fully develop this argument. Specifically, the plaintiffs have failed to cite to a single separation of powers case or to explain how their claims fit into our separation of powers doctrine. We briefly observe that, the trial court, in reaching its conclusion, cited the legislative history of P.A. 13-247, cited the express statement of legislative intent in P.A. 14-155, and noted that the amendatory language did not amount to a substantial change in the law. Resolution of the question of whether amendatory language is clarifying in nature does not first require full statutory construction of the original language or a predicate finding of ambiguity. See *Middlebury* v. *Dept. of Environmental Protection*, supra, 283 Conn. 174. Rather, courts apply the multifactor test set forth and applied in this opinion. Indeed, the plaintiffs essentially concede this point in their reply brief by citing *Middlebury*. In short, there was nothing improper about the trial court's analysis of this issue.

[19] The plaintiffs claim that the fact the decedent had an ownership interest in the property was integral to the United States Supreme Court's analysis in *Fernandez*. Ownership, in the strict sense, was not integral to the analysis. See *Whitney* v. *State Tax Commission of New York*, supra, 309 U.S. 538 ("the state is not confined to that kind of wealth which was, in colloquial language, 'owned' by a decedent before death"). As the court in *Fernandez* makes clear, it is the transmutation of rights related to property, not ownership itself, that is the touchstone of a properly taxable transfer. *Fernandez* v. *Wiener*, supra, 326 U.S. 352.

[20] The relative importance the court in *Fernandez* placed on the fact that the surviving spouse's property rights in that case were vested is revealed by the fact the court, in a seemingly scoffing manner, placed the word vested in quotation marks. *Fernandez* v. *Wiener*, supra, 326 U.S. 356.

[21] We also note that, at her death, the decedent also served as trustee of the QTIP marital deduction trusts. In addition, as noted previously in this opinion, she held a limited testamentary power of appointment over the trust property. She exercised the power in her will, which was probated in Connecticut, to appoint certain property in one of the trusts.